UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RELIANT CARE MANAGEMENT, COMPANY, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:10CV38 CDP |
| HEALTH SYSTEMS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case arose from a dispute between rival health care companies over the use of similar behavioral treatment programs.  Plaintiff Reliant Care Management Company is a health care management company that enters management agreements with skilled nursing facilities and nursing homes in Missouri.  In 2005, employees at Reliant Care created a unique treatment system for treating patients with behavioral management problems, the Focus Program.  Reliant Care obtained a copyright and has entered into licensing agreements with several nursing facilities to use the Focus Program with patients.

Sometime in 2008, defendant Health Systems Inc. – a health management company like Reliant Care – developed treatment programs similar to the Focus Program.  Like Reliant Care, Health Systems uses these treatment programs in the

Missouri facilities with which it has management agreements.  Reliant Care and the nursing facilities licensed to use the Focus Program contend these rival programs are copies of their Focus Program, and bring this action for copyright infringement and trade secret misappropriation.  They also raise several common-law claims. Both parties have moved for summary judgment.  This order deals with only the copyright and trade secret claims.  Because I conclude that issues of fact remain as to plaintiffs' claims for copyright infringement and violation of the Missouri Uniform Trade Secret Act, I will deny defendants' motions as to these claims.  I will rule on the motions directed to the other counts in the near future.

## Background

Plaintiff Reliant Care and defendant Health Systems are both health care management companies that enter management agreements with skilled nursing facilities and nursing homes in Missouri.  The companies compete to increase the patient populations at the facilities with which they have management agreements, including the population of residents with behavioral problems who require long-term care.  To this end, employees of Reliant Care began to develop a unique system for treating residents with behavioral problems in the early 2000s. Although the parties present conflicting evidence as to exactly when and by whom the system was developed, Reliant Care created the Focus Program by at least 2005

and began using it in the facilities with which it had management agreements.[1]

In general, the Focus Program provides a progressive system for treating residents with behavioral problems, requiring them to complete several steps before they are allowed to progress to the next level.  The goal of the program is to help the resident achieve the greatest level of self-sufficiency and independence. The Focus Program is now being used in every nursing facility with which Reliant Care has a management agreement, and plaintiffs copyrighted it in 2007.

In 2008, defendant Jonathon Harrup left his position as a deputy Public Administrator for Clay County to join Health Systems.  As a Public Administrator, Harrup had frequently referred patients to plaintiffs, although the parties dispute how much he knew about their use of the Focus Program or the contents of the Focus Program.  In any event, in May of 2008 Harrup proposed a plan to develop a similar treatment program for use at defendants' facilities.  This plan included hiring two of plaintiffs' employees who had helped to develop the Focus Program. Soon after these employees were hired, defendants developed a behavioral treatment program called the CCC Program.  Defendants later developed another similar treatment program called the Life Skills Program.  Both programs have

---

[1]These facilities include plaintiffs Chariton Park Health Care Center, North Village Park, Bridgewood Health Care Center, Levering Regional Health Care Center, Bernard Care Center, Crestwood Health Care Center, Heritage Care Center of Berkeley, and Four Seasons Living Center.

been or are now used at several facilities with which Health Systems has

management agreements.[2]

Plaintiffs soon discovered defendants' use of the CCC and Life Skills

Programs and concluded that defendants had copied their Focus Program. They

filed this lawsuit in January of 2010, bringing claims of copyright infringement and

trade secret misappropriation. They also raise several common-law counts,

including unfair head start, unfair competition, tortious and intentional interference

with a business expectancy, conversion, trespass, and prima facie tort. Defendants

move for summary judgment on all claims, and plaintiffs move for partial summary

judgment on their claim for unfair head start.

## Discussion

The standards for summary judgment are well settled. In determining

whether summary judgment should issue, I must view the facts and inferences from

the facts in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving

party has the burden to establish both the absence of a genuine issue of material

fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v Carrett*,

477 U.S. 317, 322 (1986). Once the moving party has met this burden, the

---

[2]These include defendants N&R of Platte City, N&R of Chillicothe, N&R of Farmington, N&R of Sweet Springs, and Vienna Nursing & Rehab.

nonmoving party may not rest on the allegations in the pleadings but must set forth

by affidavit or other evidence specific facts showing that a genuine issue of

material facts exists.  Fed. R. Civ. P. 56(e).  At the summary judgment stage, I will

not weigh evidence and decide the truth of the matter, but rather I need only

determine if there is a genuine issue of material fact.  *Anderson*, 477 U.S. at 249.

### Copyright Infringement

Defendants first move for summary judgment on plaintiffs' claim for

copyright infringement, Count I.  In this Count, plaintiffs assert that defendants

copied their Focus Program to treat residents with behavioral disorders, in

violation of the 1976 Copyright Act, 17 U.S.C. §§ 101 *et seq.*  Defendants argue

that they are entitled to summary judgment on these claims because the Focus

Program is entitled to thin or no copyright protection.  Alternatively, defendants

contend that even if the Focus Program is entitled to copyright protection,

defendants' CCC and Life Skills Programs are not substantially similar to the

Focus Program.  I disagree.  Plaintiffs' original expressions in the Focus Program

are entitled to full copyright protection, and genuine issues of material fact remain

as to whether defendants'CCC and Life Skills Programs are substantially similar in

idea and expression to the Focus Program.

In order to ultimately prevail on their claim for copyright infringement,

plaintiffs must establish two elements: (1) plaintiffs' ownership of a valid

copyright for the Focus Program, and (2) defendants' copying of the original elements of the Focus Program. *Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006).

Here, there is no dispute that plaintiffs own the copyright for the Focus Program. The United States Copyright Office issued plaintiffs a certificate of registration for their Focus Program on January 22, 2007, which was two years after plaintiffs created the program. A plaintiff's registration of its work within five years of the work's creation is prima facie evidence of the validity of the copyright and the plaintiff's ownership therein. *See* 17 U.S.C. § 410(c) (in a judicial proceeding, "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the of the facts stated in the certificate."); *accord, e.g., Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003) ("Since Taylor holds certificates of registration in all six cards, it has provided *prima facie* evidence of the validity of its copyright in the cards at issue and is entitled to a rebuttable presumption of the validity of its copyrights."). Defendants do not dispute that the copyright was issued, but they challenge the validity of the copyright and the scope of any copyright protection that may be available.

**Copyrightability of the Focus Program**

Defendants first argue that plaintiffs' copyright infringement claims fail

because plaintiffs seek protection for unprotectable ideas, processes, and systems.

Defendants refer to the idea/expression dichotomy – the "most fundamental axiom

of copyright law." *Feist*, 499 U.S. at 344.  According to this principle, copyright

protection exists not for an author's original idea, but instead for her expression of

that idea.  *See id.*; *see also Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1008 (8th

Cir. 2010) ("The principle that a copyright does not protect ideas, but only the

expression of those ideas, is longstanding.").  This is so because the purpose of

copyright law is to "promote the progress of science and useful arts," not to reward

an author's labor.  *See Feist*, 499 U.S. at 349 (quoting U.S. Const. art. I, § 8, cl. 8).

"To this end, copyright assures authors the right to their original expression, but

encourages others to build freely upon the ideas and information conveyed by a

work."  *Id.* at 349-50.  The idea/expression dichotomy is also codified into the

1976 Copyright Act:

> In no case does copyright protection for an original work of
> authorship extend to any idea, procedure, process, system, method of
> operation, concept, principle, or discovery, regardless of the form in
> which it is described, explained, illustrated, or embodied in such
> work.

17 U.S.C. § 102(b).

Even if no protection exists for an author's ideas, however, an author's unique expression of those ideas is protected under copyright law, including the author's creative choices in describing and organizing ideas. *See, e.g., Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 61 (1st Cir. 2009); *see also Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 626, 636 (8th Cir. 1989) (Minnesota Multiphasic Personality Inventory testing data entitled to copyright protection as original expressions of facts or processes).  For instance, in *Situation Management*, the plaintiff consulting company sought copyright protection for its communication and negotiation training manuals. *Situation Mgmt.*, 560 F.3d at 55.  After some of plaintiff's employees left the company and founded a rival company with its own training manuals, plaintiff filed a complaint for copyright infringement, claiming that the rival company's manuals copied plaintiff's manuals. *Id.* at 56-57.  The district court rejected plaintiff's copyright claims, concluding that even if defendant had copied plaintiff's manuals, such copying did not amount to copyright infringement because plaintiff's manuals contained mostly unprotectable systems and processes, and because the remaining protectable expressions were not substantially similar. *Id.* at 57.

But the First Circuit Court of Appeals disagreed:

> Here, the district court improperly denied copyright protection to large portions of SMS's works because it, in an error of law, found they focus on concepts and teach a noncopyrightable process.  The fact that SMS's works describe processes or systems does not make their

> *expression* noncopyrightable.  SMS's creative choices in describing
> those processes and systems, including the works' overall
> arrangement and structure, are subject to copyright protection.

*Id.* at 61.  The court also cautioned against courts losing "sight of the expressiveness of the works as a whole by focusing too closely on their noncopyrightable elements."  *Id.* at 61-62.  As in *Situation Management*, even if some elements of plaintiffs' program are not copyrightable, the program itself may still be covered: ". . .the original selection and arrangement of noncopyrightable elments is itself copyrightable."  *Id.* at 62.

After reviewing the evidence in the record before me, I conclude that plaintiffs' expression of their Focus Program is copyrightable.  Although plaintiffs cannot seek copyright protection for the various treatment ideas expressed in the Focus Program, their unique expression of those ideas – including their selection and arrangement of the treatments to be used and their use of questions to the patient such as, "Where do I go from here?" – is entitled to copyright protection. *See id.* at 61; *see also Applied Innovations*, 876 F.2d at 636 (plaintiffs made certain adjustment to factual data based on their "expertise and clinical experience," and so this data were copyright able as "original expressions of those facts or processes"); *cf. Seng-Tiong Ho v. Taflove*, 648 F.3d 489, at *6-7 (7th Cir.  2011) (no copyright protection for plaintiff's atomic model when model's value was its ability to "accurately mimic nature," and plaintiffs' claims were not for defendants'

- 9 -

appropriation of their creative expression of the model, but instead for defendants'
appropriation of the substance of the model).

### Scope of Copyright Protection

Defendants next raise several challenges to the scope of copyright protection
for the Focus Program.  First, they contend that the Focus Program is a collection
of facts entitled to only thin copyright protection.  *See, e.g., Feist*, 499 U.S. at 349
(compilations of factual data such as telephone numbers entitled to thin copyright
protection); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726,728-29 (8th Cir. 2002)
(plaintiff's tables of information about local schools, including their offered
courses and sports, was a compilation of facts entitled to only thin copyright
protection).  As defendants correctly point out, a plaintiff claiming copyright
infringement of a factual compilation can only prevail if she shows defendant's
"extensive verbatim copying" of her compilation.  *See Anderson*, 275 F.3d at 729.

I disagree with defendants that the Focus Program is a factual compilation.
It is neither a collection of data on schools as in *Anderson*, nor a collection of
names, towns, and telephone numbers as in *Feist*.  Rather, much like the training
manuals in *Situation Management*, the Focus Program is a manual containing
original processes and systems for treating patients with behavioral disorders.
Thus, although the ideas themselves are not entitled to copyright protection,
plaintiffs' original expression of those ideas is entitled to full copyright protection,

and plaintiffs need only show that the Focus Program and defendants' programs are substantially similar to ultimately prevail on this claim. *See Situation Mgmt.*, 560 F.3d at 62 (remanding case to district court for a determination of whether the parties' training manuals were substantially similar).

Defendants next argue that many of plaintiffs' expressions in the Focus Program are not entitled to copyright protection. In particular, they contend that plaintiffs were limited to a narrow range of expression when they drafted the Focus Program, because the applicable Missouri health care regulations dictated plaintiffs' expressions. Similarly, defendants assert that there was only one way to express the ideas in the Focus Program, and so plaintiffs' expressions are not copyrightable. I reject these arguments as well.

It is true that one court has concluded that portions of a plaintiff's airplane maintenance manuals were not entitled to copyright protection when federal regulations dictated both the content and form of those portions. *See Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc.*, 428 F. Supp. 1369, 1375-76 (S.D. Ga. 2006) (because federal regulations dictated most portions of the manuals' content and form, those portions lacked "creative or original touch" and so were not copyrightable). But that court also noted that copyright protection might exist for portions of the manual that "could have been expressed in more than one way." *See id.* at 1376. The Missouri regulations cited by defendants here are not so

pervasive as those in *Gulfstream*. Instead, the regulations cited by defendants refer to only a few issues, including checking residents for suicidal tendencies and preventing their exposure to hazardous substances. A review of the Focus Program reveals that it offers a holistic system for treating behaviors of residents, prescribing treatment beyond what is required by the regulations.

And, as plaintiffs point out in their response, plaintiffs' phrasing in the Focus Program differs from the phrasing in the Missouri regulations. So this is not a case where the idea and expression have merged because there is "essentially only one way to express an idea, making copying of the expression permissible." *See, e.g., Situation Mgmt.*, 560 F.3d at 62 (internal quotation marks and citation omitted). Instead, the treatment systems expressed in the Focus Program could have been expressed several ways, and plaintiffs' original phrasing is entitled to copyright protection. *See id.*; *see also Gulfstream*, 428 F. Supp. at 1376.

### Substantial Similarity

The second element of a copyright infringement claim – defendant's copying of the copyrighted material – may be established either: (a) by presenting direct evidence of copying; or (b) by showing that the defendants had access to the copyrighted materials, and that a substantial similarity of ideas and expression exists between the alleged infringing materials and the copyrighted materials. *Rottlund Co.*, 452 F.3d at 731, citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d

117, 120 (8th Cir. 1987).  "Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." *Hartman*, 833 F.2d  at 732.  Instead, plaintiffs generally establish copying through evidence of access and substantial similarity.   Access can be shown through evidence that defendants had a reasonable opportunity to view or copy the protected work; proof of actual viewing is not necessary.  *See Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992).

Plaintiffs assert they have direct evidence of defendants' copying: defendants hired two of plaintiffs' former employees; defendants' CCC Program was created in just under one month after these two employees were hired; and a copy of plaintiffs' Focus Program was discovered in defendants' file cabinet.  This is not direct evidence of copying, but it is evidence sufficient to show that there is a question of fact as to whether defendants had access to the Focus Program.  *See Moore*, 972 F.2d at 942 (plaintiff need only show a reasonable possibility of access to survive summary judgment).  If access is shown, the court then turns to the question of substantial similarity of ideas and expressions.

The Eighth Circuit has developed a two-step test for analyzing the two works' substantial similarity:

There must be substantial similarity not only of the general ideas but of the expressions of those ideas as well.  First, similarity of ideas is

> analyzed extrinsically, focusing on objective similarities in the details
> of the works.  Second, if there is substantial similarity in ideas,
> similarity of expression is evaluated using an intrinsic test depending
> on the response of the ordinary, reasonable person to the forms of
> expression.

*Hartman*, 883 F.2d at 120 (internal quotation marks and citations omitted).  When

applying the extrinsic test, the focus is on the objective characteristics of the two

works, including the type of work involved, the setting for the subject, and the

materials used.  *Rottlund Co.*, 452 F.3d at 731.  If the ideas are substantially similar

under the extrinsic test, similarity of expression is then evaluated "using an

intrinsic test depending on the response of the ordinary, reasonable person to the

forms of expression."  *Hartman*, 833 F.2d at 120.

In applying the extrinsic test, I must consider the works' similarity of ideas,

"focusing on objective similarities in the details of the works."  *Id.*  This analysis

includes consideration of "the type of artwork involved, the materials used, the

subject matter, and the setting for the subject."  *Nelson v. PRN Prods., Inc.*, 873

F.2d 1141, 1143 (8th Cir. 1989) (quoting *Sid & Marty Krofft Television Prods.,*

*Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)).  Expert opinions

may be considered at this stage.  *See, e.g., Rottlund Co.*, 452 F.3d at 731.

A comparison of plaintiffs' Focus Program and defendants' CCC and Life

Skills Programs reveals that there is more than enough evidence of a similarity of

ideas to survive summary judgment.  All three are employee training manuals for

treating residents with behavioral problems who require long-term care in skilled nursing facilities.  Plaintiffs' expert opines that all three programs "treat the same types of individuals, have levels through which residents progress, and share the ultimate goal of releasing the resident to the least restrictive environment possible." Plaintiffs' expert also details how many of the treatment policies in the programs are the same, including one common policy in both the Focus Program and the CCC Program that reserves a room for residents struggling with treatment and needing private time.  Similarly, the Focus Program and the Life Skills Program share a policy that provides for intensified treatment for residents who are non-compliant.

The second step of test for substantial similarity  – the intrinsic test  – focuses on the similarity of expression in the works.  *Rottlund Co.*, 452 F.3d at 731.  "[S]imilarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Hartman*, 833 F.2d at 120.  Infringement of expression occurs when the total concept and feel of the works are substantially similar.  *Id.*  Considering the three programs at issue, I conclude that a reasonable juror could find that the total concept and feel of how the Programs are arranged, organized, and expressed are substantially similar.  Plaintiffs present evidence of many similar expressions in all three manuals, including the manuals' asking questions to the resident such as,

- 15 -

"Where do I go from here?" at discharge.  The programs also make use of the same levels of treatment, arranged in the same way.  Because an ordinary, reasonable person could determine that the programs are substantially similar, a fact question remains and precludes summary judgment on Count I.

**Misappropriation of Trade Secrets**

Defendants also move for summary judgment on plaintiffs' claim for misappropriation of trade secrets, Count III.  In this Count, plaintiffs assert that their 500-page Focus Program manual is a trade secret that defendants misappropriated to create their CCC and Life Skills Programs, in violation of the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Ann. Stat. § 417.450 *et seq.* In support of their motion for summary judgment, defendants argue that the Focus Program manual is not a trade secret as a matter of law, because plaintiffs have repeatedly disclosed it to the public.  Defendants also contend that plaintiffs' trade secret claims fail because the Focus Program does not derive any economic value from being a secret.  I conclude that questions of fact remain as to plaintiffs' disclosure of the Focus Program and the economic benefit of keeping the Focus Program a secret, however, and so I will deny summary judgment on this Count.

Missouri has adopted the Uniform Trade Secrets Act as its law for trade secret misappropriation claims.  *See, e.g., Lyn-Flex West, Inc. v. Dieckhaus*, 24

- 16 -

S.W.3d 693, 697 (Mo. Ct. App. 1999).  Codified as the Missouri Uniform Trade

Secrets Act, this Act defines trade secrets as:

> [I]nformation, including but not limited to, technical or nontechnical
> data, a formula, pattern, compilation, program, device, method,
> technique, or process, that:
>
>> (a) Derives independent economic value, actual or
>> potential, from not being generally known to, and not
>> being readily ascertainable by proper means by other
>> persons who can obtain economic value from its
>> disclosure or use; and
>>
>> (b) Is the subject of efforts that are reasonable under the
>> circumstances to maintain its secrecy.

Mo. Ann. Stat. § 417.453; *see also Brown v. Rollet Bros. Trucking Co.*, 291

S.W.3d 766, 776 (Mo. Ct. App. 2009) ("A trade secret can be any formula, pattern,

device or compilation of information which is used in one's business, and which

gives him an opportunity to obtain an advantage over competitors who do not

know or use it.").  In addition to this definition, Missouri courts look to the

following factors in determining whether certain information is a trade secret:[3]

> (1) the extent to which the information is known outside of one's
> business;
>
> (2) the extent to which the information is known by employees and
> others involved in the business;

---

[3]These factors are set out in the first Restatement of Torts and not in the MUTSA, but
Missouri courts regularly apply them to determine whether information is a trade secret.  *See,
e.g., Lyn-Flex West., Inc. v. Dieckhaus*, 24 S.W.3d 693, 698 (Mo. Ct. App. 1999).

- 17 -

(3) the extent of measures taken by the business to guard the secrecy of the information;

(4) the value of the information to the business and its competitors;

(5) the amount of effort or money expended by the business in developing the information;

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*See Lyn-Flex*, 24 S.W.3d at 698.

 "The existence of a trade secret is a conclusion of law based on the applicable facts," *American Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 909-10 (Mo. Ct. App. 2005), but if the facts relevant to that conclusion are in dispute, the finder of fact must first resolve those disputes.  *See, e.g., Lyn-Flex*, 24 S.W.3d at 698-99 (trial court erred by directing a verdict for defendants that plaintiff's price book was not a trade secret when plaintiffs presented sufficient evidence that book was a compilation of data and that plaintiffs had taken reasonable efforts to maintain its secrecy).

Misappropriation is defined in the MUTSA as the unlawful acquisition and use of another's trade secrets through improper means, including theft, misrepresentation, breach of a duty to maintain secrecy, or corporate espionage. *See* Mo. Ann. Stat. § 417.453; *see also Lyn-Flex*, 24 S.W.3d at 699 (to show misappropriation, plaintiff must present evidence that defendant "used a trade secret of plaintiff's . . . without the consent of plaintiff and that defendants used

- 18 -

improper means to acquire the trade secret.").  The issue of whether a defendant

has misappropriated a trade secret is a question of fact.  *See, e.g., Lyn-Flex*, 24

S.W.3d at 699-700; *Cerner Corp. v. Visicu, Inc.*, 667 F. Supp. 2d 1062, 1077

(W.D. Mo. 2009).

In support of their motion, defendants first argue that the Focus Program is

not a trade secret as a matter of law, because plaintiffs have failed to take

reasonable efforts to maintain its secrecy.  In particular, defendants present

evidence that plaintiffs disclosed the Focus Program to defendant Jonathon Harrup

and to a Department of Health and Senior Services official.  Defendants also argue

that some of the information contained in the Focus Program is required by state

law, and so plaintiffs are not entitled to trade secret protection for this widely

known information.  They also contend that the parts of the Focus Program must

have been disclosed, because plaintiffs use the Program with patients and families.

Finally, defendants argue that plaintiffs further disclosed the Program by

depositing a copy of it with the U.S. Copyright Office.

Plaintiffs respond with evidence showing that issues of fact remain as to

their disclosure of the full Focus Program.  Specifically, they present evidence –

including Harrup's own testimony – that Harrup never received the full Focus

Program manual, and that they briefly allowed the DHSS official to view the full

manual upon her request, but did not allow her to take it or photocopy it.  Plaintiffs

also present evidence of their efforts to maintain the full manual's secrecy, including:

- limiting access to the complete Program to Administrators and Directors of Nursing at their facilities;

- requiring their employees to maintain the confidentiality of all of their "company proprietary information";

- telling employees at orientation that the Focus Program is confidential and covered by the confidentiality policy.

Additionally, there is evidence that plaintiffs have created more limited versions of the full manual to give to employees and residents without revealing any confidential information.  Plaintiffs further respond with evidence that the manual contains a very limited number of state regulations, and my own review of the evidence reveals that the information for which plaintiffs seek trade secret protection is largely their original creation, as discussed above. *Cf. Strategic Directions Group, Inc. v. Bristol-Meyers Squibb Co.*, 293 F.3d 1062, 1065 (8th Cir. 2002) (in some cases, a unique combination of elements may be protectable as a trade secret).

Finally, plaintiffs present evidence of how the full Focus Program was kept confidential even though a copy is kept with the U.S. Copyright Office. Specifically, a person may only view the copy and take limited notes, and may

only request copies of the staff packet upon proof of permission from plaintiffs, ongoing litigation, or a court order to receive copies.  In the face of this evidence, I cannot conclude that, as a matter of law, plaintiffs' depositing a copy of the Focus Program with the Copyright Office rendered "unreasonable" their efforts to maintain the Program's secrecy.  *Cf. Technicon Med. Info. Sys. Corp. v. Green Bay Packaging Inc.*, 687 F.2d 1032, 1039 (7th Cir. 1982) (concluding that, because plaintiff's publication of copyrighted manuals was not general, act of publication did not estop plaintiff from asserting the works constituted trade secrets). Reviewing all the other evidence in the record, I also conclude that genuine issues of fact remain as to whether and to whom plaintiffs disclosed the full Focus Program, and so I cannot conclude at this time that plaintiffs failed to take reasonable steps to maintain its secrecy, or that it is not a trade secret as a matter of law.  *See Lyn-Flex*, 24 S.W.3d at 699.

Defendants next argue that plaintiffs' MUTSA claims fail because there is no evidence that plaintiffs derive economic benefit from keeping the Focus Program a secret.  *See* Mo. Ann. Stat. § 417.453(4)(a) (defining a trade secret as information that "derives independent economic value . . . from not being generally known to" competitors).  But plaintiffs present evidence that the Focus Program was the first of its kind in Missouri and resulted in increased revenue for plaintiffs, and that plaintiffs were able to increase the census of their facilities because they

offered a treatment program that no other facility offered.  Indeed, defendant

Harrup recognized the success of the Focus Program, writing in a May 4, 2008

letter that it was unique and successful, and that defendants' facilities could

improve their own census by establishing a similar program.  Thus, plaintiffs have

presented sufficient evidence of their economic benefit from maintaining the

secrecy of the Focus Program to survive summary judgment on this Count.

<u>Conclusion</u>

As I have concluded that genuine disputes of material fact preclude

summary judgment on the copyright and trade secret misappropriation claims

(Counts I and III), I am denying defendants' summary judgment motion as to those

claims.  The summary judgment motions as to the other counts remain under

submission.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for partial summary

judgment on plaintiffs' copyright claim, Count I, [#92] is denied.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary

judgment on Counts II-VIII is denied only as to Count III, the claim under the

Missouri Uniform Trade Secrets Act, and remains under submission as to all other

counts.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file

corrected exhibit [#118] is granted.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 15th day of September, 2011.